MECHANICS INSURANCE CO. *v.* THOMPSON.

Opinion delivered February 11, 1893.

1. *Fire insurance—Warranty against working by artificial light.*

A promissory warranty, in a policy insuring a gin-house against fire, that the insured will not work there at night or by artificial light is not broken by the use of artificial light in the gin-house at night for a purpose other than work.

2.   *Warranty as to keeping water accessible.*

A warranty in such a policy that the insured will keep a barrel full of water and two buckets in the same room and within ten feet of the gin-stand is broken if the barrel or buckets are kept at a place inaccessible in case of fire.

Appeal from Faulkner Circuit Court.

Robert J. Lea, Judge.

*Eben W. Kimball* and *E. A. Bolton* for appellant.

1.   The provisions in the application, which are made a part of the policy, are *promissory warranties*, upon the truth of which the validity of the policy depends.   11 Am. & Eng. Enc. of Law, p. 290 and notes; May on Insurance, p. 160, sec. 156; Wood on Insurance, p. 422, etc.; Arnold on Insurance, p. 587.

2.   The testimony shows a failure to comply with these warranties, which must be *literally* kept, and their non-observance defeats a recovery on the policy.   Authorities *supra;* Wood, Ins. secs. 179 and note, 180–1–2; Smith, Merc. Law, p. 453.

3.   The assured must prove a literal compliance affirmatively—the burden is on him to do so.   Bailey, Onus Probandi, p. 128; Wood, Fire Ins. sec. 507; May, Ins. sec. 183; 51 Ark. 447.

*Sam Frauenthal* and *J. H. Harrod* for appellee.

1.   Mere carelessness and negligence, however great in degree, of the insured or his servants, or tenants, not amounting to fraud, though the direct cause of the fire, are covered by the policy.   May on Ins. sec. 408.

2.   Thompson was not working at night in violation of the policy.   The stipulation means not to work or run the gin machinery in the usual course of business. Language is taken most strongly against the insurer. *Ib.* sec. 175.   See also 16 N. Y. Sup. Ct. 415; 92 Pa. St. 15; May, Ins. sec. 241; 6 Ad. & El. 670; May, Ins. sec. 253.

3.    Insurers are confined to the exact words of the warranty.    May, Ins. (3d ed.), sec. 178.    Promissory warranties are not so strictly construed, but a substantial compliance is sufficient.    4 Cliff. 203, 272; 8 Metc. (Mass.), 120; 18 Pac. Rep. 267.    See also 8 Cush. (Mass.), 84.

BATTLE, J.    On the 14th of October, 1890, the Mechanics & Traders Insurance Company, by its policy of that date, insured the gin-house, gin-stand, other machinery and fixtures of H. L. Thompson against fire. The property insured was burned on the night of the 17th of December, 1890, about 11 o'clock.    To recover the loss sustained, Thompson brought this action against the insurance company.    The defense set up was the breach of two warranties.

The policy made the assured's application to the defendant for insurance a part thereof and a warranty. In this application are the following questions and answers:    "Will you warrant not to work at night, or by artificial light, and to permit no smoking about the premises?"    Answer: "Yes."    "Will you agree as a condition of this insurance to keep in the same room, and within ten feet of the gin-stand, one barrel full of water and two buckets?"    Answer: "Yes."    These are the two warranties set up in defense.

The facts relied on to show a breach of the first agreement or warranty are as follows:    Some part of the machinery in the gin-house broke during the day before the fire, and the cotton press was out of repair.    Thompson, the assured, came to Little Rock to get pulleys made, and returned during the night of the 17th of December, 1890.    He went into the gin-house on that night, about 11 o'clock, to prepare to go to work early on the following morning.    His object in going there, as he testified, was to collect the screws and taps necessary to

repair the machinery. One or two other witnesses testified that he said, soon after the fire, that his intention was to fix the machinery. Whatever his object was, to accomplish it it was necessary to use his lantern which was in the gin-house. To find it, he struck two or three matches. The head of one of them, as he struck it, fell off into the cotton in the gin-house, where he then was, and caused a fire, which soon consumed the house and cotton, and seriously damaged the machinery.

How he complied with the second agreement is shown by the following facts: The gin-stand was in the second story of the gin-house. This story was about twenty-four by fifty feet, and was divided by a partition nailed to the floor and the upper joists. In one side there were stalls for seed cotton, in the other was the lint room. The part used for a lint room was about fourteen by twenty-four feet, and the other room was about thirty-six by twenty-four feet. The gin-stand was in the middle of the partition, about fourteen feet from one end of the house and about thirty-six feet from the other. It was about eight feet square, and stood about three-fourths in the seed cotton room and one-fourth in the lint room. There were two doors in the partition wall, one on each side of the gin-stand and not far from it, and were the only ways of getting from one of these rooms to the other. There was a barrel in the seed cotton room about twenty or thirty feet from the gin-stand, and another, about seven or eight feet from the gin-stand, in the lint room. On the night of the fire, cotton was piled up all over the floor up to the door next to the latter barrel, and it (the door) was closed with a bale of cotton. At this time the barrel in the lint room was inaccessible on account of the cotton piled around it. It was not shown where the buckets were, or that the barrels were filled with water, when the fire occurred. The barrel in the lint room was full of water on the day

before the fire, and the other generally was, and the buckets were usually kept near the barrels.

The agreements which are set out in the application of the assured were made a part of the policy and conditions of the insurance. In incorporating them into the policy, they were expressly made warranties. They thereby became what are denominated promissory warranties, and their performance was made a condition upon which the insurance company should become liable for losses by fire without which the assured was not entitled to recover. Whether the performance must have been strict and literal, or substantial, the facts in this case make it unnecessary for us to determine.

1. The agreement not to work at night, or by artificial light, did not bind the assured, as a condition of the policy, not to use a light in the gin-house, at night, for any purpose. He was not to work by an artificial light. It was not stipulated in the contract that artificial light should not be used in any other connection. The facts do not show that he violated this agreement.

*1. Warranty against working by artificial light.*

2. The object of the second agreement or warranty is apparent. The barrel of water and two buckets were evidently required to be kept within ten feet of the gin-stand for the purpose of being promptly used in extinguishing any fire that might originate in or at the gin-stand. The terms of the agree ment necessarily imply that the water and buckets should have been at all times readily accessible. Its purpose could not have been subserved in any other manner.

*2. Warranty as to keeping water accessible.*

The barrel within ten feet of the gin-stand was not readily accessible. It was not known where the buckets were on the night of the fire. The assured therefore failed to perform the second agreement.

Thompson was not entitled to recover, upon the foregoing facts.

Reversed and remanded for a new trial.